IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CAROL TUBBS, | * |
| | * |
|     Plaintiff, | * |
| | * |
| vs. | *   CIVIL ACTION NO. 15-00597-B |
| | * |
| NANCY BERRYHILL,[1] | * |
| Acting Commissioner of Social | * |
| Security, | * |
| | * |
|     Defendant. | * |

**ORDER**

Plaintiff Carol Tubbs (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.*  On October 25, 2016, the parties consented to have the undersigned conduct any and all proceedings in this case.  (Doc. 24).  Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is

---

[1] Nancy Berryhill became the Acting Commissioner of Social Security on January 23, 2017.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Nancy Berryhill should be substituted for Carolyn W. Colvin as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

hereby **ORDERED** that the decision of the Commissioner **be REVERSED and REMANDED** for further proceedings not inconsistent with this decision.

I.  **Procedural History**[2]

Plaintiff filed her application for benefits on October 18, 2011, alleging disability beginning September 1, 2011, based on heart problems, high blood pressure, and anemia. (Tr. 137, 166, 171). Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Frank Klinger (hereinafter "ALJ") on September 12, 2013. (Id. at 49). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id. at 52). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 62). On March 10, 2014, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 24-38). The Appeals Council denied Plaintiff's request for review on September 24, 2015. (Id. at 1-2). Therefore, the ALJ's decision dated March 10, 2014, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties

---

[2] The Court's citations to the transcript in this order refer to the pagination assigned in CM/ECF, not the page numbers assigned by the Agency.

waived oral argument on October 25, 2016 (Doc. 23) and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issues on Appeal

1. **Whether substantial evidence supports the ALJ's finding that Plaintiff has the severe impairment of "probable borderline intellectual functioning?"**

2. **Whether the ALJ erred in failing to find that Plaintiff meets Listing 12.05C?**

3. **Whether substantial evidence supports the ALJ's assignment of "little weight" to the opinion of examining licensed professional counselor, Dr. Donald W. Blanton, Ph.D.?**

## III. Factual Background

Plaintiff was born on May 11, 1964, and was forty-nine years of age at the time of her administrative hearing on September 12, 2013. (Tr. 53, 166). Plaintiff graduated from high school attending special education classes. (Id. at 53-54).

Plaintiff last worked in 2005 as a scaler in a poultry processing plant.[3] (Id. at 172). Her past work also includes being a cook/dishwasher in a restaurant. (Id.). None of Plaintiff's past work qualifies as substantial gainful activity.

---

[3] Plaintiff reported to the Agency that she quit working in 2005 because of problems with transportation. (Tr. 171).

3

(Id. at 36, 62). In her Disability Report submitted to the Agency, Plaintiff stated that she has not been able to work since September 1, 2011, due to heart problems, high blood pressure, and anemia. (Id. at 166, 171).

**IV. Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[4] Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial

---

[4] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

4

evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**V.     Statutory And Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.  20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the

claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform his or her past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history.  Id.  Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history.  Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985).  If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled.  Jones v. Apfel, 190 F.3d 1224, 1228 (11th  Cir. 1999).  See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI.   Discussion**

As previously stated, Plaintiff presents three issues for the Court's review. Having found herein that Plaintiff's second asserted error requires remand to the Commissioner, the Court pretermits its discussion of the remaining claims.

In her brief, Plaintiff argues that the ALJ erred in failing to consider Listing 12.05C (mental retardation)[5] and in failing to find that she meets the requirements of that Listing given her Full Scale IQ score of 64 and her physical impairments, which were found to be severe by the ALJ. (Doc. 15 at 11-13). The Commissioner counters that substantial evidence supports a finding that Plaintiff lacks the requisite deficits in adaptive functioning to satisfy Listing 12.05C. (Doc. 20 at 9-12).

In his decision, the ALJ found at step two of the sequential evaluation process that Plaintiff has the severe impairments of "[i]ron deficiency, anemia secondary to eating

---

[5] On August 1, 2013, the Social Security Administration amended Listing 12.05 by replacing the words "mental retardation" with "intellectual disability." See Hickel v. Commissioner of Soc. Sec., 539 Fed. Appx. 980, 982 n.2 (11th Cir. 2013) (citing 78 Fed. Reg. 46,499, 46,501, to be codified at 20 C.F.R. pt. 404, subpt. P, app. 1)). "This change was made because the term 'mental retardation' has negative connotations, and has become offensive to many people. Id. (citations and internal quotation marks omitted). "The Social Security Administration stated that the change does not affect the actual medical definition of the disorder or available programs or services." Id. (citations and internal quotation marks omitted). As in Hickel, this opinion uses the term "mental retardation" and "intellectual disability" interchangeably.

clay with a history of transfusions, morbid obesity, hypertension with poor compliance, and probable borderline intellectual functioning." (Tr. 26).  At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (Tr. 26).  More precisely, the ALJ found that the severity of Plaintiff's mental impairment did not meet or medically equal the criteria of Listing 12.02.  (Id.).  The ALJ did not mention Listing 12.05C,[6] did not afford Plaintiff the presumption that she has deficits in adaptive functioning prior to age 22, and did not conduct the required analysis.

Under the law of this Circuit, "[a] claimant is conclusively presumed to be disabled if he meets or equals the level of severity of a listed impairment, or Listing." Perkins v. Commissioner, Soc. Sec. Admin., 553 Fed. Appx. 870, 872 (11th Cir. 2014)(citing Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997)).  A claimant bears the burden of proving that he or she has an impairment that meets or is medically equivalent to a

---

[6] In finding that Plaintiff has the severe impairments of "[i]ron deficiency anemia secondary to eating clay with a history of transfusions, morbid obesity, [and] hypertension with poor compliance. . .," the ALJ necessarily determined that Plaintiff has "a physical or other mental impairment imposing an additional and significant work-related limitation of function" as required by Listing 12.05C.

8

listed impairment.  See Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986); accord Perkins, 553 Fed. Appx. at 872 ("The claimant bears the burden of demonstrating that he meets a Listing.")(citing Barron v. Sullivan, 924 F.2d 227, 229 (11th Cir. 1991)); see also Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. . . . To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'").

To establish presumptive disability under section 12.05C, a claimant must: (1) present evidence of a valid verbal, performance, or full scale IQ of 60 through 70;[7] (2) present evidence of a physical or other mental impairment imposing

---

[7] Several of the various tests for determining IQ scores have been modified since the Listings were created.  See Hogue v. Colvin, 2014 U.S. Dist. LEXIS 59667, *10 n.4, 2014 WL 1744759, *3 n.4 (S.D. Ala. Apr. 30, 2014) (citing cases).  For example, the Wechsler Adult Intelligence Scale (the "WAIS"), a common test and the test used in this case, is now on the fourth edition (the "WAIS-IV").  Id.  While the WAIS-IV continues to measure "full scale IQ," it no longer measures verbal IQ or performance IQ *per se*.  Instead, a verbal comprehension index score is the functional equivalent of verbal IQ, and a perceptual reasoning index score is the functional equivalent of performance IQ.  Id. (citing cases).

additional and significant work-related limitation of function;[8] and (3) satisfy the diagnostic description of mental retardation in Listing 12.05.[9]  See Grant v. Astrue, 255 Fed. Appx. 374, 375 (11th Cir. 2007)("The mental retardation Impairment Listing in § 12.05C requires the claimant to demonstrate [1] a 'significant subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age 22,' as well as [2] a 'valid verbal, performance, or full scale IQ of 60 through 70 and [3] a physical or other mental impairment imposing an additional and

---

[8] For purposes of Listing 12.05C, the second prong requirement is met once there is a finding that the claimant has an additional severe impairment because the requirement of "significant work-related limitation of function" "involves something more than 'minimal' but less than 'severe.'" Johnson v. Colvin, 2014 U.S. Dist. LEXIS 13497, *7, 2014 WL 413492, *3 (S.D. Ala. Feb. 3, 2014) (quoting Edwards v. Heckler, 755 F.2d 1513, 1515 (11th Cir. 1985)).  In this case, the ALJ found Plaintiff's anemia, obesity, and hypertension to be severe, and the parties do not dispute that finding. (Tr. 26).  Therefore, the second prong of Listing 12.05C, requiring evidence of a physical or other mental impairment imposing an additional and significant work-related limitation of function, is not in dispute in this action.

[9] As discussed herein, "[m]ental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." Hogue, 2014 U.S. Dist. LEXIS 59667 at *11 n.5, 2014 WL 1744759, at *3 n.5 (quoting 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05). "'Adaptive functioning' refers to a person's ability to perform activities of daily living and social functioning." (Id.) (citations omitted).

significant work-related limitation of function.'"). In this Circuit, a claimant who presents a valid IQ score of 60 to 70 is entitled to the presumption that he manifested deficits in adaptive functioning before the age of 22. See Hodges v. Barnhart, 276 F.3d 1265, 1266, 1268-69 (11th Cir. 2001).

Presumptive disability pursuant to Listing 12.05C is rebuttable, however, and the Commissioner is charged with determining whether there is sufficient evidence to rebut the presumption.[10] Perkins, 553 F. Appx. at 873 ("A valid IQ score

---

[10] In addressing the "adaptive functioning" aspect of Listing 12.05C, the Eleventh Circuit has sustained the rejection of claims under this Listing where the claimant's IQ score was significantly inconsistent with his/her adaptive functioning, despite a qualifying IQ score. For example, in Perkins, 553 Fed. Appx. 870, the Eleventh Circuit upheld the ALJ's finding that Listing 12.05C was not met where the plaintiff performed skilled jobs, including as a skilled cook, managed other workers, and made contradictory claims regarding his education and employment history. Also, in Hickel, 539 Fed. Appx. at 984, the Eleventh Circuit held that the ALJ did not err where he acknowledged that the claimant had a valid IQ score between 60 and 70, applied the presumption established by Hodges v. Barnhart, 276 F. 3d 1265, 1268-69 (11th Cir. 2001), and found that the presumption was rebutted by other evidence that showed that the claimant did not have "deficits in adaptive functioning." In reaching that decision, the court noted that, although the claimant had been enrolled in special education classes, she worked part-time in a nursery, was a high school graduate, prepared simple meals, dressed herself, drove herself to work, attended church regularly, and socialized with friends. Id. at 984-985. See also Popp v. Heckler, 779 F.2d 1497, 1498-1500 (11th Cir. 1986) (affirming finding that Listing 12.05C was not met where the plaintiff had worked skilled jobs, obtained a college degree, and had exaggerated his deficits when examined); White v. Colvin, 2015 U.S. Dist. LEXIS 28277, 2015 WL 1013117, *4 (S.D. Ala. Mar. 9, 2015) (The ALJ properly found that, despite a Full Scale IQ score of 63, the plaintiff did not have

11

does not have to be conclusive of mental retardation where the IQ score is inconsistent with other record evidence regarding the claimant's daily living activities and behavior.").

In the present case, the ALJ did not mention Listing 12.05C, and it is not clear from the record that he conducted the analysis required under the Listing. The record reflects that Plaintiff was administered two IQ tests. Upon a referral from Plaintiff's counsel, Plaintiff was administered the Wechsler Adult Intelligence ("WAIS") test by Dr. Blanton, Ph.D., a licensed professional counselor, in August 2013. (Tr. 305). The test yielded a full scale score of 64. (Id. at 306). Dr. Blanton opined that the score was a valid assessment of Plaintiff's current level of intellectual functioning and noted that there were no distracting factors, and that Plaintiff put

---

significant limitations in adaptive functioning where the record reflected that, although the plaintiff had been in special education classes, he lived alone, maintained his financial affairs, and consistently worked at several different jobs); Robinson v. Colvin, 2015 U.S. Dist. LEXIS 43338, 2015 WL 1520431, *11 (S.D. Ala. Apr. 2, 2015) (where the plaintiff lived independently without a highly supportive living arrangement, cared for her personal needs, and had a significant work history, the ALJ properly found that her Full Scale IQ score of 60 was inconsistent with the record evidence regarding her daily activities); Lyons v. Astrue, 2009 U.S. Dist. LEXIS 128950 (M.D. Fla. May 24, 2009), adopted by 2009 U.S. Dist. LEXIS 48535, 2009 WL 1657388 (M.D. Fla. June 10, 2009)(The ALJ's finding that the claimant did not meet Listing 12.05C was supported by substantial evidence that demonstrated that the claimant had a high school diploma, was not in special education classes, completed his own social security forms, and had earnings from 1983 – 1990 between $13,696 and $18,408 per year).

12

forth good effort. (Id.). Dr. Blanton also opined that Plaintiff was in the mild range of mental retardation, and concluded that she had deficits in adaptive functioning due to mental retardation manifested prior to the age of 22 in the areas of communication, work, health and safety, and functional academic skills. (Id. at 307).

The ALJ also ordered a consultative examination by Dr. Nina Tocci in December 2013 due to his concern that Plaintiff had sought to exaggerate her symptoms with Dr. Blanton because she had not displayed any signs or symptoms of depression during a February 2012 examination by Dr. Sylvia Colon, M.D.,[11] despite reporting that she was depressed all the time. (Id. at 31, 255-56). On December 18, 2013, Dr. Tocci administered the WAIS IV, WMS-IV, and the MSE. The testing yielded a Full Scale IQ score of 66. (Id. at 309-10). Dr. Tocci opined that the results were invalid because Plaintiff demonstrated poor effort and disregarded verbal and visual cues and instructions. (Id. at

---

[11] It is noteworthy that while the ALJ indicated, in rejecting Dr. Blanton's report, that it was based on Plaintiff's subjective statements rather than objective evidence, the record reflects that the IQ score was actually generated from the WAIS examination that Dr. Blanton administered to Plaintiff. Further, the ALJ's rejection of Dr. Blanton's report because it was the result of an attorney referral and because he only saw Plaintiff one time was not appropriate. Hickel, 539 Fed. Appx. 987 (the fact that the doctor was a one-time consultative examiner retained by the claimant rather than the Commissioner is not, standing alone, a valid basis for rejecting his medical opinion.).

311). She diagnosed Plaintiff with malingering (Axis I) and opined that Plaintiff was functioning within the borderline range of intelligence; however, she deferred on providing a Diagnostic Impression for Axis II (Personality Disorders and Mental Retardation). (Id. at 310-11). Dr. Tocci opined that "[t]he chances that the range of scores from 63 to 71 includes [Plaintiff's] true IQ are 95 out of 100." (Id.). This is significant because, while Dr. Tocci found that Plaintiff's IQ score on the test she administered was not valid, Dr. Tocci nevertheless concluded that Plaintiff's true IQ was in the 63 to 71 range. This opinion by Dr. Tocci supports Dr. Blanton's finding that the Full Scale IQ score of 64 which Plaintiff received on the WAIS administered by Dr. Blanton was indeed a valid score. Also, this score is certainly consistent with Plaintiff's school records which reflect that she was in special education classes from seventh grade through graduation.[12]

---

[12] Plaintiff reported that, although she graduated from high school, she did not pass the high school exit exam. The ALJ rejected Plaintiff's statement on the ground that it is not possible to graduate without passing the high school exit examination. (Tr. 28). Aside from his unsupported assertion, the ALJ offered no evidence that sets forth the current high school graduation requirements in the state let alone those that existed when Plaintiff graduated nearly thirty years ago. To the contrary, the record contains a letter dated April 1, 2014, after the ALJ's decision, in which the Alabama Deputy Superintendent of Education explained that students graduating in 1983, like Plaintiff, "were not expected to take or pass" the Alabama high school graduation examination, which was first

Additionally, the record reflects that while Plaintiff has worked as a cook/dishwasher and also as a scaler in a chicken plant for time periods spanning several months to a few years, she has never worked at the level of substantial gainful activity. The ALJ's decision does not reflect that he reviewed this evidence under the standard set forth in Listing 12.05C, and that he afforded Plaintiff the rebuttable presumption that she manifested deficits in adaptive functioning prior to age 22.

The Court acknowledges that an ALJ is not required to explicitly discuss a listing where it may be implied from the ALJ's decision that he found that the claimant did not meet the listing in question and that finding is supported by substantial evidence. See, e.g., James v. Commissioner, Soc. Sec. Admin., 657 Fed. Appx. 835, 838 (11th Cir. 2016) (although ALJ never discussed Listing 12.05C, "[a] finding that [claimant] lacked adaptive deficits as required under the introductory paragraph of Listing 12.05 can be implied from the ALJ's conclusion that [claimant's] prior work experience indicated that she did not have an intellectual disability," noting evidence that claimant worked for fifteen years, much of that time performing semi-skilled jobs, including work as a shift leader and cashier at Pizza Hut where she was responsible for running shifts,

---

administered to students expecting to graduate in 1985. (Id. at 216, 225).

15

supervising other employees, preparing bank deposits, cashing out customers, and preparing daily reports, as well as evidence that the claimant independently performed activities of personal care, socialized, and attended church weekly); Rodriguez v. Commissioner of Soc. Sec., 633 Fed. Appx. 770, 774 (11th Cir. 2015) (finding that ALJ implicitly concluded that claimant did not have deficits in adaptive functioning where the substantial evidence showed that claimant attended mainstream high-school classes through the eleventh grade without any specialized educational assistance, assisted his wife with household chores such as cooking and laundry, did the grocery shopping for his household, attended church twice a week, had a driver's license, and had a work history for many years including jobs at the skilled and semi-skilled level); Mazer v. Commissioner of Soc. Sec., 2016 U.S. Dist. LEXIS 110642, *11-12, 2016 WL 4409341, *4 (M.D. Fla. Aug. 19, 2016) (finding that "[s]ubstantial evidence support[ed] the ALJ's implicit finding that Plaintiff lacked the necessary deficits in adaptive functioning to meet listing 12.05," where the evidence showed that claimant worked over a period of years as a sales associate, inventory stocker, car detailer, grocery clerk, and as a department manager where he supervised at least eight other people and hired and fired employees; he could drive; and he was capable of managing his own funds); and Welch v. Social Sec. Admin., 2016 U.S. Dist.

LEXIS 42989, *12-16, 2016 WL 1270619, *4 (N.D. Ala. Mar. 31, 2016) (although ALJ did not discuss Listing 12.05C, his implicit finding that claimant did not have deficits in adaptive functioning was supported by evidence that claimant cared for herself, her family, and her home without assistance, socialized with family and friends and attended public gatherings, read a book per week, drove her husband to and from work, and handled financial matters).

However, unlike the foregoing cases, the present case is not one in which the Court can easily discern the ALJ's path of reasoning. While the ALJ clearly evaluated Plaintiff's claims under Listing 12.02, the record does not reflect that the ALJ properly evaluated Plaintiff's claims under Listing 12.05C. Accordingly, the Court finds that remand is appropriate for the ALJ to consider whether Plaintiff meets Listing 12.05. See Hartman v. Colvin, 2014 U.S. Dist. LEXIS 91467, *17-18, 2014 WL 3058550, *6-8 (S.D. Ala. July 7, 2014) (reversing and remanding where the ALJ failed to discuss Listing 12.05C, and it was "far from clear that, if the ALJ had applied the correct standard, her findings regarding the Plaintiff's adaptive functioning skills would support the determination that the Plaintiff did not meet Listing 12.05(C)" - citing evidence that the claimant had a high school GPA of 3.18 and a class rank of 31 of 193, but was in special education classes and never received a high

17

school diploma; where she never worked at the level of substantial gainful activity or in a semi-skilled job; where she lived with her mother, and her mother had custody of her children; and where she was able to cook, clean, shop, handle finances and drive, although she needed seven attempts to pass the driver's test); Hogue, 2014 U.S. Dist. LEXIS 59667 at *10, 2014 WL 1744759 at *5, 2014 WL 1744759 at *16 (reversed for consideration of Listing 12.05C where the evidence was insufficient to rebut the presumption of disability, citing evidence that claimant had friends and a girlfriend, shopped and handled money, cooked and cleaned, played video games, used Facebook, and had a drivers license, but dropped out of school during his second attempt at the seventh grade, and had past work that did not include supervisory, managerial, or technical responsibilities); Frank v. Astrue, 2011 U.S. Dist. LEXIS 141162, *14-15, 2011 WL 6111692, *4 (S.D. Ala. Dec. 8, 2011) (finding that it was "clearly error to not consider Listing 12.05(C) and, given the evidence before the ALJ, [to not] find that a claimant is presumptively disabled," where evidence showed that claimant was the primary caregiver for her children, that she had past work as an office cleaner and fast food worker, and that she was in special education classes and failed to graduate).

    In sum, because it is unclear from the record that the ALJ

conducted the proper analysis under Listing 12.05C, remand is required. On remand, the ALJ should assess all of the evidence in the record relating to Listing 12.05C and expressly determine whether Plaintiff meets the Listing.

**VII.  Conclusion**

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings not inconsistent with this decision.[13]  See Melkonyan v. Sullivan, 501 U.S. 89 (1991).

**DONE** this **27th** day of **March, 2017.**

　　　　　　　　　　　　　　　　　　　　　/s/ SONJA F. BIVINS
　　　　　　　　　　　　　　　　　**UNITED STATES MAGISTRATE JUDGE**

---

[13] The Court's remand pursuant to sentence four of § 405(g) makes the Plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, and terminates this Court's jurisdiction over this matter.  See Shalala v. Schaefer, 509 U.S. 292 (1993).